# Richmond.

LEE v. SWEPSON.

January 26, 1882.

1. COMMISSIONER OF SALES.—The bond with security required of him is for the benefit of those entitled to the proceeds. If he collects without giving bond, and they ratify his act and look to him for payment, no one else can complain or claim that any equity is raised in his favor.

2. IDEM—*Subrogation.*—If purchaser should have to pay a second time, he would be substituted to the creditor's rights under a decree requiring the commissioner to pay them.

3. IDEM—*Lien of decree—Case at bar.*—Commissioner made sale under decree, and received one-third of purchase-money, without giving bond as required; sale reported and confirmed and decree entered directing him, *out of funds reported in his hands,* to pay certain creditors therein mentioned, which he failed to do. The decree was docketed, and five days later he conveyed in trust his own real estate to secure his creditor, L. On bill by creditors in the decree mentioned, to enforce it against that real estate, he having become insolvent—

HELD:

    1. Under Code 1873, ch. 182, §§ 1 and 2, the decree against commissioner had effect of a judgment, and being docketed, L was affected with notice of same, though purchaser paid commissioner in his own wrong.

    2. L has no claim to be subrogated to the rights of the creditors against the purchaser, having no equity superior to that of the latter.

4. *Lloyd* v. *Emis' Adm'r,* 29 Gratt. 598, explained and limited to the facts of that case.

In suit of *Swepson, Survivor, &c.* v. *Turpin's Ex'x, &c.,* in circuit court of Mecklenburg county, decree was entered to sell real estate of E. H. Turpin, deceased. Alexander Sydnor, commissioner, made the sale, and received one-third of the purchase money without having given the bond required by law and by the decree. Sale reported

and confirmed, and commissioner directed to pay *out of funds reported in his hands* debts to R. R. Swepson and others named in the decree. Commissioner did not pay, but became insolvent. Decree docketed. Five days after Sydnor conveyed his land in trust to secure his creditor, A. S. Lee. Creditors named in decree file bill to enforce lien of decree on that land. Lee files his petition in the cause, and it is dismissed by court below. Lee obtains an appeal to this court. Opinion of the court states the remaining facts.

*W. W. Henry,* for the appellant.

*W. E. Homes,* for the appellees.

STAPLES, J., delivered the opinion of the court.

It is not necessary to recite all the proceedings in the court below which led to the present controversy. It is sufficient to say that under decrees of the circuit court of Mecklenburg county the real estate of E. H. Turpin, dec'd, was sold to satisfy the claims of creditors. At one of these sales, made in the year 1875, William J. Hawkins became the purchaser at the price of $2,536.83, of which he paid in cash one-third to Alexander Sydnor, the commissioner, and executed his two bonds for the deferred instalments. At the time of this sale and payment Sydnor had not given any bond for the faithful discharge of his duties as commissioner, as required by the decree and by the statute. He, however, reported the sale to the court, and at the May term, 1875, the report was confirmed and the following decree was entered: "The court, adopting the statement made by Commissioner Atkyns, doth adjudge order and decree that Alexander Sydnor, commissioner, out of the funds reported in his hands, do pay to R. R. Swepson, surviving partner, or to King & Holmes, his attorneys,

$572.52, and to certain other creditors mentioned in the decree the several sums stated to be due them, respectively." This decree was regularly docketed in the clerk's office of the proper court on the 10th day of June, 1875. The amounts thus decreed against Sydnor were never paid by him, and, as is conceded, he is now entirely insolvent.

It further appears that on the 10th of June, 1875, the day upon which the decree was docketed, Sydnor executed a deed of trust upon part of his real estate to secure a debt due the appellant, Lee. This deed was, however, not acknowledged by him, nor was it admitted to record until the 15th of June, 1875. The appellees, who are the creditors provided for in the decree of May term, 1875, instituted proceedings in the circuit court to enforce that decree against the real estate of Sydnor. The appellant filed his petition claiming priority under his deed of trust. His contention is first, that inasmuch as the decree is against Sydnor as commissioner, requiring the money to be paid by him out of the funds in his hands, it imposes no personal liability, and does not constitute a lien on the real estate embraced in the trust deed. We think the word "commissioner," upon familiar principles, does not give character to the decree, and may be rejected as surplusage. The direction to pay the money "out of the funds reported in his hands" was not intended to restrict the personal liability of the defendant, but was a mere statement or recital of the reasons or grounds upon which the court proceeded in entering up the decree at that time. It was so understood by the parties interested, for immediately upon the adjournment of the court they proceeded to have the decree regularly docketed, and it certainly was also so understood by the court itself. We need not, however, trouble ourselves to discuss this point, as every difficulty on the subject is removed by the provisions of our statutes.

The first and second sections of chapter 18, Code of 1873, declare that a decree or order requiring the payment of money shall have the effect of a judgment for such money and be embraced by the word "judgment," where used in any chapter under that title. The persons entitled to the benefit of such decree or order for the payment of money shall be deemed judgment creditors, although the money be required to be paid into court, or a bank or other place of deposit, and may be enforced by execution.

The sixth section declares every judgment for money rendered in this State, theretofore or thereafter rendered, shall be a lien on all the real estate of or to which such person shall be possessed or entitled at or after the date of such judgment, &c. According to another provision, if the judgment be docketed within sixty days after its date, it overreaches all intermediate alienations and conveyances.

We are of opinion that under the operations of these provisions it is very clear that the decree of May, 1875, constituted a valid lien upon the lands of Sydnor, and the appellant purchased subject to that lien.

It is insisted that the appellant is a *bona fide* purchaser by virtue of his trust deed without actual notice, and as such his equity is superior to that of Hawkins, the purchaser under the decree of the court; that the payment made by the latter to the commissioner was in his own money. The land is still bound for the purchase money, and ought to have been subjected for the relief of the appellant. In answer to this it is sufficient to say that the decree of May, 1875, having been regularly docketed in the manner prescribed by law, constituted valid notice to all persons dealing with the property in question, and whether that notice is actual or constructive is wholly immaterial. The appellees having acquired a valid lien upon the estate of their debtor, had the right to enforce it without any terms being imposed upon them; nor can they be required

to go in pursuit of Hawkins or to intermit any of their remedies for the benefit of the appellant. He stands upon like ground with his grantor, the common debtor having no equity whatever against the appellees.

It has been said, however, that at all events if the appellant's land be taken he ought to be substituted to the rights of the appellees against Hawkins upon the principle of marshalling securities. It could be demonstrated that this principle has no sort of application to the case. It is, however, unnecessary to enter into that discussion. One thing is very clear, that securities will never be marshalled to the injury of those persons over whom the party claiming the benefit of the principle has no superior equity. The doctrine of subrogation is not founded upon any idea of contract, but upon considerations of intrinsic justice and benevolence. It is not supposed, therefore, that the appellant has equal equity with Hawkins. He must show that he has a superior equity and a right to invoke the interposition of the court in his behalf. 2 Lead. Cases in Equity, Part I, 285. He can claim nothing through the agency, or the rights of the creditor. His claim for subrogation must be based upon peculiar grounds of equity existing between Hawkins and himself alone.

The only complaint against the former is making payment to the commissioner when the latter had not given the proper bond. But how is the appellant concerned in that question? In what manner is he prejudiced by it? If the commissioner had given the bond as required by the statute, the result would have been precisely the same. The court would have decreed in favor of the appellees against the commissioner and his surety for the amount collected; that decree would bind the lands in the hands of the appellant precisely as does the present decree. The fact is, the provision of the statute requiring bonds of

commissioners with sureties are for the benefit of parties interested in the funds, and not of third persons. If a commissioner collects money without having given such bond, and the parties chose to ratify the act, and to look to him alone for payment, no one has the right to complain or to insist that such a proceeding raises up an equity in his favor.

It is very true that in *Lloyd* v. *Erwin's Adm'r*, 29 Gratt. 598, it was casually said by the judge delivering the opinion of the court, "that as to the parties entitled to the purchase-money, the purchaser at the sale under the decree was the primary, if not the only, debtor." The remark does not, of course, admit of general application. In that case it was perhaps held correct, for there the commissioner was insolvent and was not even before the court. He had never given any bond, and the only recourse of the parties interested was against the purchaser who had paid in his own wrong.

It would seem, however, to be very clear that if the commissioner, who has collected money without giving the proper bond, is before the court, is solvent and able to pay, the court would not hesitate to decree against him before resorting to the purchaser, and still less would it hesitate where the parties interested are content with that course of proceeding.

It is equally clear that if the purchaser, in consequence of the default of the commissioner, is required to make good the loss, he would be entitled to a decree over against the commissioner for his indemnity. And there is no doubt that in the present case, if Hawkins, the purchaser of the land, had been compelled to pay the second time, the court would have decreed in his favor against the commissioner—a practice sanctioned by this court in *Tyler* v. *Toms*, not yet reported.

It will scarcely be maintained that if such a decree had

been rendered, it could have been impugned, or questioned by the appellant. He does not stand upon any higher ground with respect to the decree in favor of the appellees. That decree is for the benefit not of the appellant, but, incidentally, of Hawkins, who, himself, stands in the position of surety for the commissioner, and if Hawkins should hereafter be required, as he may be, to satisfy the decree, he would be substituted to all the rights of the appellees. Without protracting this discussion, we think the claim of the appellant is not well founded, and the decree of the circuit court must be affirmed.

DECREE AFFIRMED.