# CHARLESTON

UNITED STATES BLOWPIPE COMPANY *v.* SPENCER *et al.*

Submitted September 13, 1906.   Decided January 15, 1907.

1. MECHANICS' LIENS— *Proceedings to Perfect — Statement—Name of Owner.*

   The name of the owner of property against which a mechanic's lien is filed must be given, if known; but a substantial compliance with the statute in this respect is all that is required; and if upon considering the entire lien, it can be ascertained with reasonable certainty who the owner is, it will be sufficient.  (p. 194.)

2. SAME— *Enforcement—Burden of Proof.*

   To render a mechanic's lien valid, it must appear upon its face that all the provisions of the statute necessary to its creation have been substantially complied with, and where by proper pleadings a fact material and necessary to its validity is put in issue, the burden is upon the one asserting the lien to establish such fact by proof.  (pp. 195, 199.)

3. DEPOSITS IN COURT —*Proceedings for Payment Out of Court—Decree.*

   A decree requiring a receiver to pay certain sums of money to particular persons is personal against such receiver.  (p. 199 )

4. SAME— *Order—Notice.*

   Where money has been paid to a receiver under an order of court to the credit of a particular suit, and has not been invested by order of court, but remains in his hands, he may be required to disburse the same to such parties and in such manner as the court may order, without notice to him of the entry of such order.  (p. 200.)

5. SAME.

   But the judgment or decree directing the receiver to disburse such fund should not be personal.   It should show on its face that it is against him in his official character, and that the amount is to be paid out of the fund held by him in his official capacity, in the due course of the administration of the affairs of the receivership.  (p. 200.)

6. SAME.

   A personal judgment or decree should be rendered against a receiver only when the property or funds placed in his hands have been lost through some fault, misconduct or mismanagement thereof on his part.  (p. 200.)

7. SAME.

   Where money has been paid into the hands of a general receiver to the credit of a particular suit, and by him, under an

order of court, loaned out, no order or decree should be entered requiring him to pay out and disburse the fund until he has first been ordered to collect it, and it is ascertained to be in his hands; or unless his failure to collect the same is attributable to his fault, negligence, misappropriation or mismanagement of the fund.   (p. 200.)

8.   Same—*Liability of Depositary.*

Where an order has been entered directing the receiver to collect such funds, and he fails to do so, and it is made to appear to the court that such failure is attributable to the misconduct or mismanagement of the receiver in relation to the trust, a decree may be entered, after giving him an opportunity to be heard, charging him personally, or permission may be given to sue him and his sureties on his official bond.   (p. 203.)

Appeal from Circuit Court, Mason County.

Action by the United States Blowpipe Company against J. S. Spencer and others.   From a judgment in favor of plaintiff, defendants Fairbanks Company and others appeal.

*Affirmed in part.   Reversed in part.*

J. S. Spencer, Chas. E. Hogg, and W. R. Gunn, for appellants.

Rankin Wiley, for appellee.

Sanders, Judge:

This is the third time this cause has been before this Court upon appeal, and to present more clearly our reasons for the conclusion we have reached, a brief history of the case will be given.   The Point Pleasant Furniture Company, on the 11th day of December, 1891, executed a trust deed to J. P. R. B. Smith, upon certain real estate lying in Mason county, which it had purchased from the Kanawha Lumber and Furniture Company, to secure the payment of certain notes given for the unpaid purchase money, amounting in the aggregate to the sum of five thousand dollars.   The notes, being payable to J. S. Spencer, J. J. Bright, T. Stribling and R. Wiley, Jr., they being the sole owners of the stock of the Kanawha Lumber and Furniture Company, were assigned to J. S. Spencer about the time of or soon after the execution of the trust deed.

On the 17th day of July, 1892, the plaintiff, United States Blowpipe Company, on an account against the Point Pleasant

Furniture Company of seventeen hundred and twelve dollars and fifty cents, filed a mechalic's lien against the said real estate, and on the 14th day of July, 1892, the defendant, Moore Carving Machine Company, also filed a mechanic's lien against the Point Pleasant Furniture Company for the sum of twelve hundred and sixty-two dollars. On the 5th day of December, 1892, Smith, trustee under the said deed of trust, sold the property thereby conveyed for the sum of nineteen thousand three hundred dollars, and paid the same to the lien creditors of the Point Pleasant Furniture Company, except the sum of three thousand and twenty-six dollars and seventy-five cents. Later the plaintiff Blowpipe Company, filed its bill in equity against J. S. Spencer, Smith, trustee, the Moore Carving Machine Company and others, for the purpose of enforcing its mechanic's lien and to set aside the said deed of trust and sale made thereunder, and set up the mechanic's lien of the Moore Carving Machine Company. A demurrer to the bill was interposed by certain of the defendants, which was sustained. In the meantime the plaintiff and the Moore Carving Machine Company obtained judgments upon their accounts for which the mechanic's liens had been filed, and upon the demurrer being sustained, the Blowpipe Company filed an amended bill, more specifically setting up its mechanic's lien, as well as the mechanic's lien of the Moore Carving Machine Company, and also setting up the said judgments, and asking to have the trustee's sale and deed made in pursuance thereof, set aside; to which amended bill a demurrer was also interposed by some of the defendants, which was likewise sustained, and the bill and amended bill dismissed. From this decree the plaintiff appealed, and secured a reversal thereof, as will appear from the reported decision of the case in 40 W. Va. 698. Upon the case being remanded to the circuit court, the Fairbanks Company, Mayer & Loewenstein, the American Dryer Company and Page Belting Company came into the cause by petition, and were made parties defendant therein.

The answers of James P. Hayes, the purchaser of the property sold under the trust deed, and of Smith, trustee, were filed, averring, among other things, a compliance with the terms of sale, and alleging that the sale had been made

pursuant to the terms and provisions of the trust deed, and denying the allegations of the bill made for the purpose of setting aside the trustee's sale and deed.

The Point Pleasant Furniture Company filed affidavits showing that the demurrer which appeared to have been interposed by it had been filed inadvertently and without authority, and thereupon the order showing the filing of such demurrer was in that respect corrected, and the bill taken for confessed as to it. Thereupon the Point Pleasant Furniture Company and others of the defendants filed pleas setting up the irregularity of the service of process upon the Point Pleasant Furniture Company, to which pleas general replications were filed, and certain of the defendants craved oyer of the summons and demurred to the plaintiff's bill, and the cause coming on to be heard upon the pleadings, former orders and depositions which had been taken and filed in the cause, the service of process upon the Point Pleasant Furniture Company was adjudged to be void, and the plaintiff's bill dismissed, from which decree the plaintiff again appealed, and upon a hearing of the appeal in this Court the same was reversed and the cause remanded. 46 W. Va. 590. Upon return of the cause to the circuit court for the second time, the defendants, Fairbanks Company, Mayer & Loewenstein, the American Dryer Company and Page Belting Company demurred to the plaintiff's bill, which was overruled, and thereupon they filed separate answers, attacking the mechanic's liens of the plaintiff and the Moore Carving Machine Company; and the Clapp Patent Case Company filed a petition setting up a judgment against the Point Pleasant Furniture Company, and charging the defendant J. S. Spencer with fraud in promoting and organizing the Point Pleasant Furniture Company. The cause, over the objection of a number of the defendants, was referred to a commissioner, to ascertain and report, among other things, the amount of money in the hands of Charles E. Hogg, general receiver, to the credit of this suit—the said sum of three thousand and twenty-six dollars and seventy-five cents, remaining in the hands of Smith, trustee, having, in the meantime, been paid over to the said receiver, and by him, under the order of the court, loaned out—the liens upon such money, the nature, character and priorities

thereof, what real estate was then owned by the defendant, Point Pleasant Furniture Company, and what real estate was owned by it at the time of the filing of the mechanic's liens, what sale was made of the Point Pleasant Furniture Company's real property and by what authority and by virtue of what lien or liens, and the amount realized from the sale thereof, and what disposition was made of the money; what debts set forth in the cause had been paid, and out of what fund, and if paid upon any lien of any kind, the date of such lien and how-created.

Upon the coming in of the report, various exceptions were endorsed, all of which were overruled, and the court fixed and adjudicated the liens and the priorities thereof against the Point Pleasant Furniture Company, and held the mechanic's liens of the plaintiff and the Moore Carving Machine Company to be valid and binding, and gave them priority over all other liens, and that of the plaintiff priority over the lien of the Moore Carving Machine Company, and directed the general receiver, out of the money in his hands, as such, in this cause, to pay to the plaintiff the sum of three thousand and sixty-three dollars and sixty-six cents, and to the Moore Carving Machine Company the sum of two thousand one hundred and ninety-four dollars and eighty-three cents, with interest from the 4th day of December, 1905, until paid, these two sums, being the aggregate amount, including principal and interest, reported by the commissioner as being in the receiver's hands; and ordering further that if any money remained in his hands to the credit of the sum to pay the same on the remaining liens, in the order of their priority as fixed by the decree; and from this decree the defendants, Fairbanks Company, Mayer & Loewenstein, Page Belting Company, the American Dryer Company and Charles E. Hogg, general receiver, have appealed.

The first question we have to determine is whether or not the demurrer to the plaintiff's bill should have been sustained. The principal ground relied upon in support of the demurrer is that there is not a sufficient designation of the owner of the property against which the mechanic's liens are filed. This question as to the plaintiff's lien was before this Court upon the first appeal, and is *res adjudicata* as to all who were then before the court. It is argued, however,

that it is also *res adjudicata* as to the defendants whose demurrer is now under consideration, because they became parties and were before the court upon the second appeal, when it was held that the lien was valid and binding. This question was not before the court for consideration upon the second appeal, but even if so, the opinion only shows that the adjudication is final between those who were parties at the time of its rendition. JUDGE BRANNON, in delivering the opinion of the Court, says: "The former decision is final, and binding to establish the lien of the United States Blowpipe Company. It is not, however, final as to the claims of the Moore Carving Company, as they have not yet been passed on by the circuit court. Of course, the former decision has no effect as to the Page Belting Company, the Fairbanks Company, Mayer & Loewenstein and the American Dryer Company, as they were not parties until afterwards."

Though not *res adjudecata* as to the appellant demurring, yet it was held that the statute had been substantially complid with in designating the owner, and that the lien was valid. We cannot now sustain the demurrer without overruling that decision. The mechanic's lien of the Moore Carving Machine Company has not been passed upon, but upon an examination of it we find it substantially the same as to the designation of the owner as that of the plaintiff, and this being so, we must hold it good. The Court, upon the first appeal, held that if the designation of the owner given in the description of the property stood alone, it would not be sufficient, but when read in connection with the account proper, that the owner was plainly and sufficiently designated. JUDGE HOLT, delivering the opinion of the Court, says: " But complaint is made that there is no sufficient designation of the name of the owner, and I think the objection would be well taken if the designation given in the description of the property stood alone. But it does not, and when read in connection with the account proper, it names and designates the owner in plain and unequivocal manner; one that is obvious, and can not be misunderstood; and is at least a substantial, if not a literal compliance with the statute. In the account proper plaintiff states that the machinery furnished ' was delivered and placed on the premises of the

said Point Pleasant Furniture Company, and that the extra work and labor was done in and upon the said premises in the affidavit hereto attached, described;' and in the affidavit it is called '·the property,' being two lots and five acres, which were conveyed to the Point Pleasant Furniture Company by deed dated December 11, 1891, as above recited. The president of the Blowpipe Company swore to the account on behalf of his company, and virtually said in so many words:     'This account for one thousand seven hundred and twelve dollars and fifty cents is a just and true account, due said company, after allowing all credits.     The following is a description of the property intended to be covered by the lien, viz:     Lot No. 1 in tier 6, and lot No. 1 in tier 5, of the town of Point Pleasant, and a certain tract of land, estimated to contain five acres (giving the metes and bounds) being the same lots and tract of land conveyed to the Point Pleasant Furniture Company by the Kanawha Lumber and Furniture Company by its deed bearing date on the 11th day of December, 1891, and of record in the clerk's office, etc., to which deed reference is here made; which said premises described in said deed are the premises of the said Point Pleasant Furniture Company.'     'Premises,' the real estate conveyed (in this case conveyed in fee simple) with reference to the deed of conveyance, is also used in describing the property.     I do not see how any more positive, explicit and unequivocal designation could be made of the name of the owner.     It is in this regard a substantial observance of and compliance with the requirements of the statute, that has been held to be sufficient.''

The opinion purports to quote the mechanic's lien, but upon an examination of it we fail to find the words ''which said premises described in said deed are the premises of the Point Pleasant Furniture Company,'' contained in it.     It was said that the objection would be well taken if the designation in the description of the property stood alone, but that when read in connection with the account proper it names and designates the owner in a plain and unequivocal manner, but we fail to see that the designation in the account furnishes much aid to the designation given in the description of the property.     It says '' delivered and placed on the premises of

the Point Pleasant Furniture Company." Are the premises referred to the same as those against which the mechanic's lien was filed? Because the machinery was "delivered and placed upon the premises" can it be said from that that the lien was filed against the same premises upon which the material was delivered? And again, was the Point Pleasant Furniture Company the owner of the premises, or the lessee thereof? As to this, the account does not show. As an original proposition, individually I would seriously hesitate to hold that the designation of the owner in these liens is such as is required by the statute. It should not be left to mere conjecture to determine who the owner is. The statute requires the name of the owner, if known, to be given, which evidently means it must be so as not to leave it to a mere matter of conjecture to determine this question. Practically all we have to determine who the owner of the property is, is that provision which shows it was the same property which was conveyed to the Point Pleasant Furniture Company on the 11th day of December, 1891, and that part of the account which says it was delivered upon the premises of the company. The lien was filed in 1902, nearly a year after the conveyance of the property to the Furniture Company. Are we to assume that because a conveyance of property was made to it, that it continued to own this same property a year afterwards? The simple assertion that some time in the past the property had been conveyed to the lienor would seem to fall short of such designation of the owner as is contemplated by the statute. But this question has been put at rest by the previous decision herein, which we will not now overthrow.

It is said, however, that the designation of the owner in the lien of the Moore Carving Machine Company does not come up to that given in the lien of the plaintiff. The designation is the same, except in the account proper of the latter there is no mention of the machinery having been delivered and placed upon the premises of the Furniture Company, but as we have observed, this detracts very little, if anything at all, from the designation of the owner. And, again, in the affidavit of the latter lien, it is said "that the annexed and attached account is, as he verily believes, in every respect, a just and true account of the work and labor

done and performed and material and machinery furnished by the said Moore Carving Machine Company to and for the Point Pleasant Furniture Company, a corporation, for the altering and repairing *its* manufacturing building, being the same Point Pleasant Furniture Company mentioned in the annexed and attached and foregoing account." The former decision in this case is recognized as controlling here, and therefore we hold the mechanic's lien good; and this being so, the demurrer was properly overruled.

These two mechanic's liens appearing upon their faces to be good, we must next inquire as to whether or not they have been established by proof. It is charged, in the answers filed disputing their validity, that the labor performed or material or machinery furnished was not furnished under a contract with the owner for the purpose of altering, repairing or removing the house, mill, factory or other structure. These liens show that the labor performed and material or machinery furnished was by virtue of a contract with the owner, and that it was for the purpose of repairing and altering its manufacturing building. This fills the requirement of that statute. Section 2, chapter 75, Code 1899; section 3111 Anno. Code 1906. These allegations being essential to the validity of the lien, it is incumbent upon him who asserts the lien to show the existence of these facts by proper evidence. When we look to the evidence upon this point we find an abundant proof to sustain these liens. It has been satisfactorily proven that the labor performed and machinery and material furnished was by virtue of a contract with the Point Pleasant Furniture Company, and that it was furnished for the purposes set forth in this lien. The Point Pleasant Furniture Company does not answer. It does not deny that this machinery was so furnished. This issue is made by some of the other creditors of the furniture company. We think the court committed no error in decreeing the liens valid and subsisting, and giving them priority over the other creditors of the Furniture Company.

We now come to the consideration of the assignment of error of Charles E. Hogg, the general receiver. A motion was made by him in the circuit court to set aside the decree in so far as it affected him, which was overruled. He claims that the decree directing him to disburse the funds in his

hands as such receiver is personal, and that he should have
had notice; that inasmuch as the money had been loaned out
under the order of the court, it was the duty of the court to
order him to collect it and see that it was in his hands be-
fore ordering it to be disbursed. The record discloses that
the sum of three thousand and twenty-six dollars and sev-
enty-five cents was paid to the general receiver to the credit
of this suit; that under the order of the court this money
had been loaned out, and up to the time of the order direct-
ing, him to disburse it, no order had been made directing or
ordering the collection thereof. It is true the general re-
ceiver was summoned before the commissioner to whom this
case had been referred, to ascertain and report the amount
of money in his hands to the credit of the suit; and the re-
port and evidence returned with it show that the money was
paid into his hands and by him, under the order of the
court, loaned out. Therefore, at the time he was ordered to
pay out this money, it was not in his hands. It had been, but
the court had ordered him to part with it, which he did as
directed, and when this was done, it cannot be said to be
longer in his hands or under his control, except by and
through the order of the court. High on Receivers, section
178; Beach on Receiver, p. 256. He has the securities taken
for the amount loaned, but the question may often arise as
to whether or not the fund can be collected from the bor-
rower, and if not, then whether the receiver is liable. A
receiver is not a guarantor of a fund after having loaned
out or invested the same under the order of the court. If he
has complied with the court's order, invested the money as
directed or loaned it as required, then there can be no lia-
bility attached to him, unless he has been guilty of some
negligence or wrong doing in connection therewith. There-
fore, if a decree directing a receiver to pay out a stipulated
sum of money is personal, we can readily see the injury which
might result to him when at the time of the entry of the
decree the funds were not actually in his hands. It is con-
tended by the appellees that the receiver took the note in his
individual name and not as general receiver, that interest,
as required by statute, had not been collected from time to
time; that he surrendered part of the security without ob-
taining other security, and that he failed to report to court

the status of the fund, and that all this goes to show that if the fund or any part thereof is lost, he should be held personally liable therefor. These questions are not now before us for consideration. There is no dispute that the money was paid to the receiver, that it was loaned out, and that it has not been collected. There is nothing here to show that the fund has been lost or that there is any likelihood that it will be lost, or that legal interest will not be paid by the borrower, or that the receiver, when ordered to collect the money, will not be able to collect the entire sum loaned, with all legal interest thereon.

When the receiver has been directed to collect these funds and fails to do so, then will be the proper time to inquire into these matters. The question will then arise as to whether or not he has fulfilled the requirements of the law and has obeyed the order of the court in reference to the fund, and as to whether or not he has handled the same in that ordinarily careful manner which is required by law of him; and if upon an investigation of this question, the court should find that the money or any part thereof has been lost through the negligence or misconduct of the receiver, then of course to that extent he and his sureties on his bond will become personally liable.

Is the decree ordering the receiver to disburse the fund, personal? This seems to be well settled in this State. In *Crawford* v. *Fickey*, 41 W. Va. 544, it is held that an order that a receiver pay a fixed sum to a certain person is a personal judgment or decree against the receiver; and also in *Richard et al* v. *Schley et al.*, 27 W. Va. 617, it is held that a decree against a general receiver of the court, requiring him to pay out of the funds in his hands to a party in the cause for which the decree is rendered, a certain sum, is a lien on the lands of such general receiver, and the person entitled to the benefit of such judgment or decree is to be deemed a judgment creditor, and may enforce his lien as other judgment creditors, by a suit in equity. Our Code, section 1, chapter 139, section 4141 Anno. Code, 1906, provides that a decree or order requiring the payment of money shall have the effect of a judgment for such money, and by section 2, same chapter, section 4142 Anno. Code 1906, it is provided that persons entitled to the benefit of

any decree or order requiring the payment of money shall be deemed judgment creditors, and that execution may issue thereon.   The Court of Appeals of Virginia, in *Lee* v. *Swepson*, 76 Va. 173, held a decree against a receiver making sale of real estate and collecting the purchase money, directing him out of the fund reported in his hands to pay certain creditors therein mentioned, to be a personal decree.   This decision was predicated upon sections 1 and 2, chapter 182, of the Code of Virginia, 1873, which is the same as our statute above referred to.

The decree against the receiver being personal, should he have had notice?   Where money has been paid into the hands of a receiver to the credit of a suit, it is not necessary to give him notice before entering an order directing a disbursement of the fund.   The record shows the amount of money which went into his hands, which would remain there unless ordered out by the court, and if so, the record would show what disposition was made of it.   He being an agent or officer of the court, his possession is regarded as the possession of the court, and he is always subject to the court's order.   The Supreme Court of Appeals of the United States has held that he can appeal from a decree ordering him to pay a specific sum of money found due upon a settlement of his accounts out of the fund in his hands as such receiver.   *Hinckley* v. *R. Co.*, 94 U. S. 469.   In *Crawford* v. *Fickey*, *supra*, Judge Brannon, speaking for the Court, says:   "But the point is made by counsel that the receiver was no party to the suit in which the decree against him was made, and no notice was given him, and it is void as to him.   He is the officer of the court.   Must he have notice before any order can be made requiring him to pay.   Of course, courts should be careful, before decreeing him to pay fixed amounts, to see that they are in his hands.   But he is always before the court."

"The receiver's right to appeal in all matters relating to his official conduct, his accounts, and orders of court relating thereto, is well established.   In such case he, in effect, occupies the position of a party to the suit." Smith on Receivers, section 317.

We must now inquire as to whether the court correctly decreed against the receiver, under the facts disclosed by the

record.   A general receiver into whose hands certain funds have been paid to the credit of a particular suit, is at all times before the court so far as the distribution of that fund is concerned, and no process or notice is necessary for the purpose of bringing him before the court.   He is the servant or agent of the court—the person appointed as the custodian of the fund.   The court can handle the money only through an officer or agent, and when a receiver has been appointed and accepted the trust by appearing and taking charge of the fund, he is the arm of the court, and must hold the money subject to its order, being ready at all times to answer any call it may make.   But when he has parted with the money by investing it or loaning it out in obedience to the court's order, he is not required to have the money in court for distribution until he has been ordered to collect it and has collected it, or is guilty of such misconduct or mismanagement of the fund as to lay himself personally liable.

And a receiver is not personally liable until misconduct or mismanagement is shown, and not then unless such misconduct or mismanagement has resulted in loss to the estate; he is only required to exercise ordinary care in the management of the property entrusted to him, and so long as he obeys the orders of the court and exercises that degree of care, he cannot be held personally liable.   When he took the money here he did it under an order of court which directed him to "loan the said money, taking good security therefor, and further hold the same to be distributed under a future order of the court."   This order plainly directed the money to be loaned, which the receiver did, and having done so, it would be impossible for him to further hold it to be distributed under a future order of the court.

Where a fund has been paid into his hands, and there has been no order directing him to dispose of it, it is then in the hands of the court, and without notice or other proceeding an order may be entered directing a distribution of it.   When an order is made directing the fund to be paid out by a receiver, it should direct the payment to be made out of the fund in his hands as such, and should not be in the form of a personal judgment, unless it be a proceeding against him to charge him personally on account of misconduct in relation to the trust, or misappropriation

of the fund. "In an action against a receiver in his offi-
cial capacity, a judgment against him is in form against him
officially, not personally, and is to be satisfied out of the
trust funds. A judgment in the ordinary form is improper;
it must show on its face that it is against the receiver as
such, and be made payable out of the funds held by him in
such capacity in the due course of the administration of the
receivership." Beach on Receivers, section 720; p. 767. It
is an order made by a court to its officer, holding in his
hands funds of the court which are in *custodia legis*, and
which are to be used by such officer in compliance with the
order. Before such order is entered it should by proper
proceedings be ascertained that the funds are in the hands
of the receiver. It is the court paying its funds through its
officer or agent, and it should not compel him to pay out
that which he has not, unless his failure to have it is at-
tributable to his fault. If the receiver fails to obey the order
of the court to collect the fund, he may be proceeded against
as for a contempt. If he is unable to collect the
money on account of the insolvency of the security, and if
the loss cannot be attributed to his fault, then there
can be no personal liability upon him, but when his
failure can be attributed to his fault and negligence, the
court may give a personal decree against him, or give direc-
tion, by proper order, to have suit brought against him and
his sureties on his official bond.

By section 15 of chapter 133 of the Code, a circuit court is
authorized to appoint a general receiver, whose duty is pre-
scribed under that section to be, unless otherwise specially
ordered, to receive, take charge of and invest in such stock
or other security as the court may specially order, and in
the manner required by such order, all money paid into
court or other place, and standing subject to the order of the
court, and all money so paid under any judgment or decree
of the court, and to pay out and dispose of the same as the
court may order or decree. And by section 16 of the same
chapter, it is provided that the certificates of stock or other
security in which the money in the hands of the receiver
has been invested, shall be taken in the name of the general
receiver as such, and be kept by him, unless otherwise
specially ordered, and he shall have power to sell, transfer

or collect the same, when ordered by the court to do so, and not otherwise. And by section 19 of the same chapter he is held liable for all money which comes into his hands as such receiver, and if he fails to invest the money as required for the space of sixty days after the 'same shall be or ought to have been received by him, or if he shall fail to pay out any money when required by the court to pay the same, for the space of sixty days after it shall have come into his hands for the purpose of such payment, he shall be charged with interest "from the date such money was or ought to have been received by him until such investment or payment is made, unless upon good cause shown to the court, it shall otherwise order. It will be seen from these sections of the statute that the receiver is to receive the money and hold it until required by the court to invest it, and when he has been ordered to invest it and has invested it as required, then he cannot sell, transfer or collect it unless ordered by the court to do so. The receiver has no control over the fund except to handle it as the court orders, and when he fails to invest it after a certain time, or to pay out the funds which have come into his hands when ordered to do so, he shall pay interest, etc.

The United States Blowpipe Company, Moore Carving Machine Company and the Clapp Patent Case Company cross-assign error as follows:

First. The Court erred in not requiring J. S. Spencer to account for the five thousand dollars received by him under the sale made by virtue of said deed to Smith, trustee.

Second. The Court erred in overruling their exceptions to Commissioner Beller's report.

Third. The Court erred in not requiring compound interest to be charged against the borrower of the three thousand dollars.

As to the third assignment, it will suffice to say that as the record disclosed that at the time the decree of reference was made, the money was not in the hands of the receiver, but had been loaned out under the order of the court, there should have been no reference to ascertain the amount in the hands of the receiver, but, as we have observed, he should be directed to collect it, and in doing so, it will be his duty to collect the whole amount due, including such interest as the law allows in such cases.

The second assignment involves the exceptions of the plaintiff and the Moore Carving Machine Company to the commissioner's report. The report is first excepted to on the ground that the commissioner did not charge the general receiver with interest compounded from January 1st each year since he received the fund. What has been said as to the third assignment applies here, and inasmuch as the decree will have to be reversed in so far as it affects the general receiver, the commissioner's report, in so far as it finds the amount in the hands of the general receiver, including principal and interest, will be set aside, that all matters pertaining thereto may be settled in a proper manner.

The second ground of exception to the report is that the commissioner did not allow compound interest to the plaintiff, and defendant Moore Carving Machine Company. It is difficult indeed to see upon what principle they base such claim. All they can recover is the amount of their debt, with its legal interest. In no event would they be entitled to compound interest. If compound interest should be charged against the receiver or borrower, it should be paid to the creditors, according to their priority, as decreed.

As to the first assignment, it does not appear that the circuit court has passed in any way upon this question. Therefore, as to it, there is nothing for us to review. This question should first be disposed of by the circuit court. *Monroe* v. *Bartlett*, 6 W. Va. 441.

The decree of the circuit court, in so far as it orders the receiver to pay out certain funds, is reversed and annulled, and the report of the commissioner, in so far as it finds and reports the amount of money paid into the hands of the receiver and loaned out, and charges principal and interest, is set aside, and in all other respects the decree is affirmed.

*Reversed in part.    Affirmed in part.*