GERTRUDE D. BOICE et al.

*v.*

CORNELIUS N. CONOVER et al.

1. Where the affidavit to a partnership chattel mortgage, given to secure a loan of $2,000 to one of the partners individually, and endorsements of unmatured firm notes for $2,800, recited that the true consideration thereof was a loan of $4,800 to the firm then due and owing, the mortgage was, as to a prior judgment creditor of the firm, void, under *Rev. Sup. p. 491 ¶ 11*, declaring a chattel mortgage void as to creditors unless an affidavit is attached thereto stating the consideration, although the misstatement was the result of an honest mistake of the mortgagee.

2. A father, knowing that a partnership which his son was to enter with another would require several thousand dollars capital, promised to lend them $2,000, and after the partnership was formed advanced that amount, and took his son's individual notes therefor, payable in long time, and, on maturity, took renewal notes of the son individually. The son, who kept the firm books, credited the advances as payments on his share of the capital.—*Held*, that the advances were to the son individually, and not to the firm.

3. A creditor who accepts a chattel mortgage as security for his debt becomes a purchaser, and cannot, therefore, while relying on his mortgage, have a prior voluntary conveyance by the mortgagor declared fraudulent as to him, in his right as creditor.

4. Where two chattel mortgages are in point of time a first and second lien on firm property, and an execution levied on the firm property and individual property of one of the partners a third lien on it, and the first mortgage, which is larger than the execution lien, is, as to the execution creditor, void by statute as in fraud of creditors, in marshaling the securities the execution lien should be first paid, then the excess of the first mortgage over the execution lien, then the second mortgage in full, and then the unpaid balance of the first mortgage.

5. In such a case, the first mortgagee cannot compel the execution creditor to resort first to the individual property levied on to satisfy his lien.

6. Two chattel mortgages on the stock and accounts of a firm, and an execution on the stock, were in time respectively a first, second and third lien; and a receiver, being appointed, paid to the first, with the consent of the second mortgagee, but without notice to the execution creditor, part of the sum due on his mortgage. The first mortgage was subsequently held void as to the execution.—*Held*, that the payment was made subject to the right of the execution creditor, if the payment included part of the proceeds of the stock, to have the same repaid into court for the satisfaction of his lien.

On final hearing.

*Mr. John S. Voorhees*, for the complainants.

*Mr. Alan H. Strong*, for the defendant Edwin Allen.

*Mr. Charles H. Runyon*, for the defendant Mapes &c. Co.

EMERY, V. C.

The dispute in this case relates to the respective priorities of two chattel mortgages and of a judgment and execution creditor; one chattel mortgage being held by complainants, one by the defendant Edwin Allen and the execution creditor being the defendant the Mapes Formula and Guano Company. Both chattel mortgages were given by the defendants Cornelius N. Conover and William Allen, partners as Conover & Allen, the complainants' mortgage being dated on October 21st, 1893, and recorded October 25th, 1893, subsequent to the defendant Allen's mortgage, which was dated September 8th, 1893, and recorded September 9th, 1893. The two mortgages cover the same property, and include the partnership stock, horses, wagons &c., goods and fixtures, and also the books of account, debts &c., due or to become due to the firm. The judgment of the Mapes &c. Company was obtained on December 12th, 1893, in the Middlesex circuit court, for $1,096.61 damages, and $33.50 costs, upon an account due from the firm of Conover & Allen which, as appears from the record of the judgment, was incurred between February 2d and April 10th, 1893, and previous to the execution of either of the chattel mortgages.

Upon execution issued under this judgment, levy was made upon the goods and chattels covered by the chattel mortgages (but not upon the book accounts and choses in action mortgaged), and also upon the separate interest of Conover, one of the members of the firm, in certain real estate in Middlesex county. Levy was made on the execution before the filing of complainants' bill.

On December 28th, 1893, complainants filed a bill to fore-

close their chattel mortgage, disputing the priority of defendant Allen's mortgage as to $2,000, part of the debt secured by it, on the ground that this portion of the debt secured by Allen's mortgage was the individual debt of William Allen, one of the partners, and was not a firm debt, and the mortgage was, therefore, charged to be fraudulent and voluntary as to complainants' mortgage, which was given to secure a firm debt or liability. Upon this bill a receiver of the mortgaged property was appointed, the receiver being Mr. C. H. Runyon, the attorney of the Mapes company, and the mortgaged property (including the book accounts and debts due) has been sold and collected. Out of the proceeds the receiver has paid to Edwin Allen the sum of $2,017.78, under orders of the court (consented to by complainants), to be applied on that part of the debt secured by Edwin Allen's mortgage which was not disputed by complainants' original bill. Subsequently to this sale and collection by the receiver and to these payments, and in order to reach the funds in court for application on his mortgage, the defendant Edwin Allen (at the suggestion of the court, made when the case was brought to hearing) filed a cross-bill upon his mortgage against the complainants and the Mapes &c. Company, who had not put in any answer to the original bill. In its answer to the cross-bill the Mapes company attacks the Allen mortgage as void for want of a proper affidavit under the statute relating to chattel mortgages, and also as a voluntary mortgage to the extent of $2,000, in that it was given to this extent by the members of the firm, upon the firm property, to secure an individual debt of one of the partners, and is, therefore, void as against the judgment creditors of the firm, whose debts existed at the time of the mortgage.

The defendant Edwin Allen alleges that the entire indebtedness secured or intended to be secured by his mortgage was a partnership debt or liability, and, as against the execution creditor, defendant also alleges that the real estate of Conover, one of the defendants in execution, is sufficient to satisfy the execution, and claims that this must be first sold before resorting to the goods and chattels of the firm.

The Allen mortgage was given to secure the payment of $4,800 on demand, with interest from the date of the mortgage (September 8th, 1893), and in his affidavit annexed to the mortgage, Edwin Allen, the mortgagee, swears that

"the true consideration of the said mortgage is as follows, viz., the sum of four thousand eight hundred dollars cash money loaned by this deponent to said Cornelius N. Conover and William Allen, partners, trading as Conover & Allen, at their request and before the execution hereof, and now due and owing from them to this deponent, and the deponent further says that there is due on said mortgage the sum of forty-eight hundred dollars besides lawful interest thereon from the 8th day of September, 1893."

It is admitted by the answer and the cross-bill of Edwin Allen, and is undisputed on the evidence, that at the time of giving the mortgage neither the firm nor William Allen owed Edwin Allen more than $2,000, and that the $2,800 additional included in the mortgage represented notes to that amount which Edwin Allen had endorsed for the accommodation of the firm, and on which he was liable as endorser, but which were not then due, so that to this extent the true state of the indebtedness and the true consideration of the mortgage were not disclosed by the mortgage or affidavit. The execution creditor insists that this failure to disclose the true consideration of the mortgage avoids the mortgage as to it under the statute, and also that the affidavit that any of the $2,000 indebtedness was due or to become due from the firm was false in fact, this being a debt due solely from William Allen for the capital advanced by William Allen to the firm. The disputed question of fact in the case is whether the $2,000 was an indebtedness due from the firm or only from William Allen, and upon the whole evidence I reach the conclusion that the debt was not a firm debt, but was due to Edwin Allen from his son William alone and not from the firm. Edwin Allen had no dealings whatever with Conover, the other partner, in relation to the advance of the $2,000, and this money was at different times between June 20th, 1892, and August 3d, 1892, paid or advanced by Edwin Allen to his son William, the evidence of indebtedness in each case being notes signed by William Allen alone, which were delivered by him to his father and

were renewed when due by the son's obligations alone.  By the agreement between the partners, each was to contribute $2,500 capital, and in the books of the firm, which were kept by William Allen, he entered the moneys received by him from his father as part of the credit to his account as a partner.  So far as William is concerned, this and the other evidence in the case— showing that up to the time of giving the mortgage these advances from his father had not been treated as a partnership *liability*—is conclusive, and entirely overcomes his present statement that the money was originally advanced as a loan to the firm.  William Allen's statement that the advances from his father were put in his account " so that it could be either way, that I owed it to him or the firm owed it to him," is of itself sufficient to discredit his present evidence.

As to Edwin Allen's evidence on this point, it appears that he knew that it would require about five or six thousand dollars to buy the stock or business which the firm proposed to take, and that before the partnership was formed he promised his son to let them have $2,000.  One thousand dollars of the amount was advanced June 20th, 1892, on a note for one year, signed only by his son ; $300 on July 15th, 1892, on a similar note.  These two notes were renewed, on falling due June 20th, 1893, and July 15th, 1893, by other notes of the son alone, for one year. On July 23d, 1892, there was another advance by Edwin Allen to his son of $500, for which he took his son's note, probably at one year, and on August 3d, 1892, the fourth and last advance of $150 on William's note for one year.  The former was renewed on July 23d, 1893, by a note of six months, and the latter on August 3d, 1893, by a note at one year.  These notes make up $1,950, and are all the evidences of indebtedness produced in relation to the advances, and Edwin Allen still retained all these renewed notes up to the time of hearing.

His explanation of the notes being signed by his son and not by the firm, is that " he wasn't near the firm's place of business, and when he gave me these I didn't have any idea of trouble ahead.  I was careless in taking them in that way."  This explanation given when " trouble " had arisen and his advance to

his son is put in jeopardy, is not sufficient to overcome the effect of the written evidence agreed on by the parties at the time of the advances, by taking the securities of his son alone. The time for repayment fixed by the notes is an additional indication that the advances were not temporary loans to the firm which were to be repaid by them, but that they were advances to the son alone. The money advanced undoubtedly went to the use of the firm, but this is not sufficient to constitute the lender a creditor of the firm (*Bannister* v. *Miller, 32 Atl. Rep. 1066, Reed, V. C., October, 1895*), and the question is whether Edwin Allen advanced the money to his son or whether he advanced it to the firm.

Considering the situation and the relationship of the parties—the security given being notes of the son alone, and the time for repayment—and the whole aspect of the case, it seems to me that there is no evidence which will justify me in holding that the real transaction was not the one which was evidenced by the writings agreed on by the parties at the time.

Complainants claim that, under the decision in *Uhler* v. *Browning, 4 Dutch. 79, 82 (New Jersey Supreme Court, 1859)*, the parol evidence is not admissible to contradict the written evidence furnished by the notes themselves, or to show that the notes were debts of the firm, but without resting the decision upon this point, I find that as matter of fact upon all the evidence, it appears that $2,000 of the indebtedness included in the Allen mortgage was not for cash money loaned by Edwin Allen to the partners at their request and before the execution of the mortgage, as stated in the affidavit, but was, in fact, for money advanced to William Allen alone, and the payment of which was assumed by the firm for the first time by the chattel mortgage itself, this assumption by the firm being subsequent to the creation of the debts of the complainant and of the Mapes company.

It is claimed on behalf of defendant Allen that the indebtedness to complainant was purely voluntary and arose subsequent to the execution of the Allen mortgage, this claim being based on the fact that the complainants' mortgage was given only to

secure them against liability as endorsers for accommodation on a note of Conover and Allen for $1,500; that the complainant Gertrude Boice was a married woman and therefore not bound by the endorsement, and that her subsequent payment of the note to the bank which had discounted it was purely voluntary on her part and not sufficient to constitute her an existing creditor of the firm. The fault in this contention is that it overlooks the fact that the real creditor of the firm upon these notes was the bank, and that the complainant Mrs. Boice, on paying the notes, as she had a right to do, and perhaps was morally bound to do, was substituted for the bank as the creditor of the firm, and therefore, so far as relates to the time when the complainants' debt was created, occupies the position of the bank as a creditor of the firm existing at the time of the Allen mortgage. *Cramer* v. *Reford, 2 C. E. Gr. 367, 380, 387.* The real question of difficulty in relation to complainants' case against the Allen mortgage is not whether the complainants were existing creditors at the time of the Allen mortgage, but whether, having taken a mortgage to secure their debt, they are now simply subsequent mortgagees or purchasers from the firm, and not creditors standing in their rights as creditors for an existing debt or liability which was the consideration of the mortgage.

The attack upon the validity of the Allen mortgage is made from two different standpoints—first, under the Chattel Mortgage act, and secondly as voluntary conveyances made by a firm to secure the individual indebtedness of one of the partners, and therefore fraudulent and void against creditors of the firm. The Mapes company insists upon both of these objections; the complainants have, on the record, only relied upon the latter objection.

As to the first objection, the fourth section of the Chattel Mortgage act of May 2d, 1895 (*Rev. Sup. p. 491*), provides

"that every mortgage of goods and chattels * * * shall be absolutely void as against the creditors of the mortgagor and as against subsequent purchasers and mortgagees in good faith, unless the mortgage have annexed thereto an affidavit stating the consideration of said mortgage and as nearly as possible the amount due and to grow due thereon."

The affidavit annexed to the Allen mortgage failed altogether to disclose its true consideration. For $2,800 of it the mortgagee was only liable as endorser; for the other $2,000 the money had been advanced, as I have found, to William Allen and not to the firm.

The *status* of the indebtedness disclosed in the affidavit diverges so widely from the true state of facts that it seems impossible to deny that this affidavit did not, either in respect to the $2,800 or the $2,000, comply with the letter or the spirit of the statute, and the suppression of the true consideration was manifestly material.

Mr. Allen's counsel claims that this misstatement was the result of an honest mistake, but the question is one of the construction of a statute which defines what the affidavit must contain and makes no exception or allowance for mistakes. As was said in *Kennard* v. *Gray, 58 N. H. 51,* a case arising on an affidavit under a somewhat similar law, the statute condemns such securities because their natural tendency is to deceive and defraud creditors, however honest the intention of the parties. And, as was held by Mr. Justice Dixon in *Fletcher* v. *Bonnet, 6 Dick. Ch. Rep. 618 (Errors and Appeals, 1893),* the validity of the chattel mortgage depends on the correctness of the information in the affidavit and not on the knowledge of the affiant of its truth. Neither, as it seems to me, can the validity of the mortgage depend on the honesty of an affiant in making an affidavit which is substantially untrue. I hold, therefore, that as against the Mapes &c. Company, judgment creditors of the firm, the Allen mortgage is void under the chattel mortgage statute. As to complainants' mortgage the situation is different. It is proved by one of the complainants' witnesses that the complainant Mrs. Boice and her attorney, who drew her mortgage, had actual knowledge of the Allen mortgage at the time of taking her mortgage, and if the complainants' rights rest solely on her mortgage she is not protected by the statute, which only covers mortgagees in good faith—that is, without notice.

But complainants claim that they are creditors of the firm, and that inasmuch as the mortgage given to Edwin Allen was

to secure a debt of the individual partner, she is entitled to set it aside as fraudulent against her, under the statute relating to fraudulent conveyances.  As to judgment creditors of the firm the mortgage would be set aside (*Bannister* v. *Miller, supra*), but the question is whether, as a mortgagee, the complainants are not to be considered as *purchasers* under the statute of frauds rather than creditors.   The complainants are not standing here upon their original debt and upon the rights which the common law and statute both gave them as creditors to set aside any conveyance made by their debtor to others in fraud of their rights as creditors, but so far as relates to their lien on the mortgaged property they stand solely upon a mortgage voluntarily made to them by their debtors of the debtors' rights in personal property, which property had previously been subjected by their grantors to the payment of a voluntary charge in favor of Edwin Allen.

Under the statutes relating to fraudulent conveyances, mortgagees of real estate have always been held to be purchasers and entitled to the protection of the *27th Elizabeth* relating to subsequent purchasers, re-enacted substantially in our statute of frauds and perjuries (*Rev. p. 446 § 13; Lavalette* v. *Thompson, 2 Beas. 274 (Chanceller Green, 1861); 1 Sm. Lead. Cas. (8th ed.) 28*), and judgment creditors are not purchasers within *27th Elizabeth* so as to avoid voluntary conveyances.   *Beavan* v. *Lord Oxford, 2 Jur. N. S. 121.*

This section 13 of our statute extends in terms only to the purchasers of real estate, and the *27th Elizabeth* has been construed not to embrace chattels.   *2 Big. Fraud 526 § 2.*   And it has been held, in a late English case (*Barton* v. *Vanheythuysen (45 Eng. Ch.), 11 Hare \*126*), that it did not extend to chattels, and that a mortgagee of chattels could not, under his mortgage, attack a previous voluntary conveyance by his mortgagor, although he might have set it aside, had he stood simply upon the rights which the law gave him as creditor.   See, also, *Bill* v. *Cureton, 2 Myl. & K. 503, 512.*

*Perrine* v. *Bank, 26 Vr. 402*, decides that where a mortgage is declared to be subject to a prior mortgage, this will prevent

the mortgagee, as mortgagee, from contesting the validity of the former mortgage as a fraud on creditors. And, although there was no such provision in complainant's mortgage, it seems to me that so long as the complainant stands on her rights as mortgagee of goods and chattels, under a mortgage given to secure a pre-existing debt or liability, they must accept the mortgage, as a mortgage only, to the extent of the mortgagors' then interest in the property mortgaged, and cannot, as mortgagees, claim to set aside the previous voluntary mortgage as a fraud upon them, considered in the light of creditors under the statute. In other words, a mortgagor of a fraudulent grantor cannot attack a fraudulent conveyance, on the basis of being a creditor, for the debt which was the consideration of the mortgage, and the reason is that the rights to attack a fraudulent conveyance, given by the common law and statute to creditors, are rights which proceed from the law only, and are given by the law alone to creditors purely as creditors, and having a lien as such creditors on the property conveyed. If the debtor by his voluntary act intervenes to secure such creditor by mortgage or deed subsequent to the fraudulent conveyance, the creditor then becomes a purchaser, succeeding to his grantor's rights as they were at the time of the conveyance, and protected only as such purchaser is protected from previous fraudulent conveyances. He is certainly a purchaser, and cannot be at once both creditor and purchaser. This view of the effect of taking a mortgage or conveyance by a creditor is confirmed by the following cases: *1 Hilliard Mort. 625* §§ *9, 10*, citing *Sprague* v. *Graham, 29 Me. 160; Fox* v. *Clark, Walk. (Mich.) 535*, a leading case.

Upon this branch of the case, therefore, I conclude that the Allen mortgage is not invalid against the complainants, either under the Chattel Mortgage act or as a conveyance in fraud of the creditors of the firm.

The Allen mortgage, which is the first in point of time, being thus valid against the complainants' mortgage, the second security, in time, and invalid as against the execution creditor, the third security, and the complainants' mortgage, being admittedly valid as against the execution creditor, these three encumbrances, so

far as relates to the proceeds of sale of the goods and chattels which they all cover, would regularly be marshaled under the rule settled in *Hoag* v. *Sayre, 6 Stew. Eq. 552* (*Errors and Appeals, 1881*). This rule is that the execution creditors shall first be paid out of the proceeds, so far as the amount due on the first mortgage extends, then the first mortgagee shall receive from the proceeds the balance of the amount for which his mortgage is prior to the second mortgagee, then the second mortgagee is to be paid in full, and then the residue to the first mortgagee. The defendant Allen insists, however, that there must be a further marshaling of securities in his favor, and that the execution creditor must first exhaust the separate real estate of Cornelius N. Conover, which has been levied on and not yet sold. If the execution creditor were now here simply as a creditor seeking as a complainant to set aside a fraudulent conveyance, made by the judgment debtors, then, under the rule settled in *Wales* v. *Lawrence, 9 Stew. Eq. 207* (*Van Fleet, V. C., 1882*), it might be necessary to sell the separate real estate of any of the debtors, before the property fraudulently conveyed could be reached. But the execution creditor in this case is a defendant and rests on his levy made on the goods and chattels of his debtors and upon his statutory rights under the Chattel Mortgage act to have the mortgage of complainants on these chattels declared void as to him. His *status* as defendant claiming the benefit of the Chattel Mortgage act is different from that of a creditor as complainant attacking a fraudulent conveyance under the act relating to fraudulent conveyances, and the fact that the execution creditor has not exhausted his rights against the separate real estate under the execution, is no reason for denying him the right given by the statute, to have the goods and chattels levied on first applied to the payment of his debt, if he so chooses ; and, indeed, the sale of the goods and chattels, which was prevented by the appointment of a receiver under a prior mortgage, would otherwise regularly have taken place under the statute, prior to a sale of any of the lands.

The defendant Allen further insists that upon the principle of marshaling securities, the execution creditor, having two

funds, must first resort to the one not covered by Allen's mort-
gage. But these rules are not applicable. In the first place,
there clearly can be no enforced marshaling of securities, unless
the securities to be marshaled are all valid as against the credi-
tor whose security is marshaled. To require the creditor in
this case first to exhaust the separate real estate would be to
·compel him to relieve, by his good security, the mortgage which
·is void against him, and in effect would be indirectly holding it
valid against him. But secondly and most important, the doc-
trine of marshaling does not apply as between creditors of dif-
ferent persons. *14 Am. & Eng. Encycl. L. 699,* and cases cited ;
*1 Story Eq. Jur.* §§ *642, 645.*

Mr. Justice Story says :

"Where a creditor has a right to resort to two persons, who are his joint
and several debtors, he is not compellable to yield up his remedy against either,
since he has the right to stand upon the letter and spirit of his contract, unless
some supervening equity changes or modifies his rights. If each debtor is
equally bound in equity and justice for the debt, as in the case of joint debtors
or partners, where both have had the full benefit of the debt, the interference
of a court of equity to change the responsibility from both partners or debtors
to one, would seem to be utterly without any principle to support it, unless
there was a duty in one of the debtors or partners to pay the debt in discharge
of the other."

See, also, *Dorr* v. *Shaw, 4 Johns. Ch. 17, 20 ; Ex parte Ken-
dall, 17 Ves. 520.* In the latter case Lord Eldon says that
there might be an opposite equity—that of compelling the credi-
tor to go first against the property of surviving partners, pri-
marily liable, before resorting to the separate estate of a deceased
partner. In our courts the rule is recognized that the firm assets
must be exhausted before the separate estate of a deceased part-
ner can be charged with the firm debts. *Buckingham* v. *Ludlum,
10 Stew. Eq. 137, 148 (Van Fleet, V. C., 1889) ; affirmed, 14
Stew. Eq. 539.* There has been no issue on the record, or sug-
gestion on the evidence in this case, that, as between the part-
ners, Conover and Allen, Conover is equitably liable to pay
complainants' debt in discharge of the firm assets, and evidently
such an issue could not be determined without taking an account

between the partners, nor without bringing in all who are interested in Conover's separate real estate levied on. No equitable duty is charged or appears, imposing on the partner Conover the duty of discharging the execution for the firm debt from his individual property before exhausting the firm assets, and the judgment will, therefore, be first paid from the proceeds of the sale of the firm property levied on.

A single question remains for consideration. It relates to the effect of the orders made in the cause, directing the receiver, out of the moneys in his hands, to pay the sum amounting to $2,000 toward payment of the note of that amount endorsed by Edwin Allen for the accommodation of the firm of Conover & Allen. On March 6th, 1894, and before the time of the Mapes company to answer had expired, an order was made directing that the receiver apply $750 of the moneys in his hands for that purpose toward the payment of the note then due and held by the National Bank of New Jersey, the said note forming part of the consideration of Allen's mortgage. This order was made upon a written waiver of notice, signed by complainants' solicitor, and their written statement annexed to the order that no objection was made to granting the same. No notice was given to the Mapes company. On May 18th, 1894, another like order was made, directing the receiver to pay the balance due on the note out of the moneys in his hands, so far as they extended. This order was made upon the written consent of the complainants' solicitors annexed to the order, and also without any notice to the Mapes company. The receiver made the payments directed by these orders on March 10th, 1894, $750, and on May 26th, 1894, $1,267.78, in all, $2,017.78.

The funds in the hands of the receiver consisted of proceeds of sale of the mortgaged goods and chattels embraced in the levy, and also of accounts collected which were included in both mortgages, but were not covered by the levy. The payments were made without the consent of the execution creditor, for although the receiver was the attorney for the execution creditors, the payment made by him as receiver under orders of the court, and without notice to the execution creditor, cannot be consid-

ered as consented to by them. These payments, therefore, must be considered as made out of the proceeds of the accounts collected, as to which the Chattel Mortgage act does not apply, and as to which the consenting parties also had the authority to consent. They cannot be considered as effective against the execution creditor in relation to the proceeds of sale of the goods and chattels covered by his execution. The execution creditor will therefore be paid out of the proceeds of sale of the goods levied on, and if the amounts paid as above exceed the proceeds of accounts collected, the defendant Edwin Allen must return the excess to the receiver, so far as it represents goods levied on, for the purpose of satisfying the execution.

The receiver is the officer of the court, appointed by it to convert the property for the benefit of the persons ultimately entitled, and for the purposes of paying out in the suit, the money in the receiver's hands must be treated as money in the court. Regularly, money in court can only be paid out on notice to all parties to the suit, or at least to all the parties appearing on the record to be interested in the proceeds. Where a fund is improperly paid out of court, without providing for a payment due on it, the court will order the person who has received it to pay the amount. *2 Dan. Ch. Pr.* *1805. The same course is pursued where the fund has been paid out in consequence of fraudulent misrepresentations. *2 Dan. Ch. Pr.* *1814. The payment to Edwin Allen in this case must be considered as having been made subject to the rights of the parties who had no notice of the order and did not consent to it, and subject to any direction on final decree for reimbursement in their favor. The accounts of the receiver will be settled before final decree, if necessary to carry out these directions, and the form of decree settled on notice to all parties.