PROGRESS PRESS BRICK & MACHINE COMPANY, A CORPORATION, PLAINTIFF, v. JESSE M. SPRAGUE ET AL., DEFENDANTS.

and

WILLIAM A. LAHRMAN, TRUSTEE IN BANKRUPTCY OF RELIABLE LOAN & INVESTMENT COMPANY, A CORPORATION, APPELLANT, v. LEO G. HADLEY, FRANK CROWDER, JESSE M. SPRAGUE, DAVID G. BOSSERMAN, E. McD. STEVENS, J. W. LOSSE, P. J. WUEST, SENECA C. TAYLOR AND R. C. BRINKMAN, RESPONDENTS.—65 S. W. (2d) 154.

St. Louis Court of Appeals. Opinion filed November 7, 1933.

Motion of appellant, Leo G. Hadley, for rehearing, overruled November 21, 1933.

1118

*Stern & Burnett* for appellant.

*R. M. Nichols* for Leo G. Hadley; *R. C. Brinkman pro se.*

*E. McD. Stevens pro se.*

BENNICK, C.—This is an appeal by William A. Lahrman, trustee in bankruptcy of the Reliable Loan .& Investment Company, a corporation, from an order of the Circuit Court of St. Louis County, ·denying his application for an order upon the respondents herein as interest coupon holders to repay to the receiver of the mortgaged property certain interest payments alleged to have been improperly .and unlawfully paid out to such respondents from the funds of the receivership estate in the hands of the receiver.

In order to appreciate the issues involved on this appeal it is necessary to refer in as brief manner as possible to certain preliminary matters which antedated and gave occasion for the controversy out of which this proceeding has arisen.

While much of the record in the cause proper is not before us, the parties inform us that the same is an action in the nature of an equitable mechanic's lien suit, the purpose of which is to determine the question of priority as between the alleged mechanic's liens and the lien of the deed of trust upon the property, and to adjudicate and foreclose the mechanic's liens. The. action was commenced on April 4, 1928, by the Progress Press Brick & Machine Company as plaintiff, against Jesse M. Sprague and the unknown owners and holders of the negotiable promissory notes and coupons described in and secured by the said deed of trust. The property in question is a twelve-family apartment building known as 7204-7208 Zephyr Place, in Maplewood, St. Louis County, Missouri.

From so much of the deed of trust as has been incorporated in the record, it appears that it was executed on May 2, 1927, by one Della M. Brodhage to the Title Guaranty Trust Company as trustee for the persons, firms, or corporations who might afterwards become the owners and holders of the notes described in and secured thereby. It recited an indebtedness of the mortgagor in the sum of $50,000, for which debt she had executed a series of negotiable promissory notes in different amounts, one hundred eleven in number, payable to bearer, and bearing interest at the rate of six per cent per annum as evidenced by semi-annual interest coupons executed by her and attached to the notes to cover the successive installments of interests thereafter to become due on the second days of may and November of each year until maturity. Each of such notes recited on its face that it was one of a series of one hundred eleven notes of like form, tenor, and effect save as to maturities and amounts; that both principal and interest were payable at the American Trust Company in the city of St. Louis; and that the payment of both principal and interest of each and every one of said notes and coupons was to be made equally and ratably, and without priority or preference of any one note over another by any reason whatsoever.

In the deed of trust itself was a like provision, reciting that the conveyance was made for the equal and proportionate benefit and security of all present and future holders of the notes and interest coupons secured thereby, and for the enforcement of the payment of said notes and coupons according to their tenor and true intent and meaning, as well as according to the provisions and stipulations of the deed of trust, without preference, priority, or distinction as to lien or otherwise of one note over another by reason of priority of execution, negotiation, or maturity, or by reason of any other cause, so that each and every note so issued should have the same right and lien privilege under the deed of trust, and so that the principal and interest of every such note should be secured equally and ratably the same as though all of them bore the same date of maturity and had been executed and negotiated simultaneously.

Another provision relied upon as being of some materiality was one to the effect that if at the maturity of said principal notes, some or all of them should not be presented for payment, the American Trust Company might receive from the then owners of the premises such money as might be due upon the missing notes with accrued interest thereon; that it should hold such money as trustee for the benefit of the owners or holders of such missing notes, and should pay the same over to such owners or holders upon presentation of the notes, or upon satisfactory proof that they had been lost or destroyed; and that when the notes had matured, and all those presented had been paid, and the sum representing the missing notes with interest

thereon had been deposited as above provided, then the Title Guaranty Trust Company was authorized for and in behalf of the holders of said notes and coupons to execute a deed of release to the grantor, releasing the property from the lien of the deed of trust.

Following the filing of plaintiff's petition in the principal action, numerous other persons and corporations, likewise claiming mechanic's liens upon the property, entered their several appearances in the cause and filed cross-bills asserting their alleged liens.

No further proceedings in the cause are shown until February 9, 1929, when upon the application of plaintiff, Progress Press Brick & Machine Company, for a receiver for the company, John Haley, Esq., was appointed receiver by the court, and thereafter qualified and entered upon the discharge of his duties, among which was the collection of rents in connection with the continued operation and management of the business. At the same time, Seneca C. Taylor, Esq., was named as attorney for the receiver.

On June 19, 1929, Leo G. Hadley, one of the respondents herein, who had theretofore entered his appearance as a party defendant in the cause as one of the unknown holders of notes secured by the deed of trust, filed his motion for an order upon the receiver for the payment to him of the interest then due upon his notes.

In his motion, respondent Hadley set up that he was the owner and holder of notes of the aggregate value of $18,100, the same being a portion of the series of notes described in and secured by the deed of trust to the contents of which reference has already been made. He then alleged that as owner and holder of the notes he had in his possession interest coupons due on November 2, 1928, and May 2, 1929, aggregating the sum of $1,086, and that default in the payment of such coupons had been made, although demand for payment had been made in accordance with the tenor and effect thereof. He further alleged that the mechanic's lien claimants had no right to satisfy their respective claims out of the rents and profits of the property, but were limited to the establishment of their liens against the real estate and the improvements thereon; and that the receiver had in his hands an aggregate sum of $2,400 (presumably over and above the expenses of operation), which had been realized from the collection of rents upon the premises. The prayer of the motion was for an order upon the receiver, directing him to pay to said respondent Hadley, out of the accumulation of rents in the receiver's hands and in payment of the interest due as evidenced by the coupons in Hadley's possession, the sum of $1,086, and for such other orders in the premises as might be just and proper.

No immediate action was taken upon such motion; and meanwhile, on July 29, 1929, an order of publication was granted in the principal cause, the same being the conventional order requiring the un-

known owners and holders of the notes and coupons described in the deed of trust to appear to the September, 1929, term of the circuit court, and there to plead to plaintiff's petition. Of course the order of publication, which was issued at the instance of plaintiff, Progress Press Brick & Machine Company, described the action as one for the establishment of a mechanic's lien, and made no reference to the pendency of respondent Hadley's motion in the ancillary receivership proceeding.

The record shows that thereafter, on October 25, 1929, the Reliable Loan and Investment Company, a corporation, the predecessor in interest of the appellant herein, entered its appearance in the cause as a party defendant as one of the unknown holders of the notes described in and secured by the deed of trust, and in due course filed its answers to plaintiff's petition and the various cross-bills of the other lien claimants, setting up that it was the owner of notes of the aggregate value of $13,500.

Apparently at the time of its entry of appearance in the cause the Reliable Loan and Investment Company had not yet been adjudged a bankrupt. However there is no dispute that it was ultimately adjudged a bankrupt; that appellant, William A. Lahrman, was designated and qualified as its trustee in bankruptcy; that it owned twenty-six of the notes in question, aggregating the value of $13,500; and that its interest coupons falling due on November 2, 1928, and on subsequent due dates thereafter up to the time of the trial had not been paid. The evidence at the hearing was that the amount so due as evidenced by the coupons in default was $2,835.

On February 3, 1930, the court sustained respondent Hadley's motion which had been pending in the cause since June 19, 1929, the order reciting that "motion of Leo G. Hadley for order on the receiver to pay the interest heretofore filed and submitted herein having been duly and fully considered is now by the court hereby sustained." It will be observed that the order did not purport to recite that any notice of the filing of or hearing upon the motion had been given to any parties interested in the disbursement of the fund; and, in fact, at the hearing on appellant's subsequent motion attacking the validity of such order, Hadley's attorney admitted in open court that he had served only the receiver, and that no service of notice had been had upon the Reliable Loan and Investment Company, the predecessor in interest of the appellant herein as we have already pointed out.

Following the entry of the order sustaining respondent Hadley's motion and in compliance with it, the receiver paid to Hadley the sum of $1,086, one payment of $543 being made on March 27, 1930, and a second payment of a like amount on July 22, 1930. Thereafter the other respondents herein, who were either themselves owners and holders of interest coupons or else represented such owners and

holders as their attorneys, presented their several coupons to the receiver as they were in default or became due, and received payment in full upon them without any presentation of their several claims to or authorization of payment by the court. Suffice it to say that the coupons so presented were for interest accruals falling due on the several due dates between November 2, 1927, and November 2, 1931, and the payments without prior authorization were made by the receiver upon different occasions between May 6, 1930, and December 1, 1931.

It seems to be a conceded fact that the sums so paid out by the receiver from time to time to the several respondents upon their interest coupons were in the aggregate as follows: Leo G. Hadley, $3,696; Frank Crowder, $126; Jesse M. Sprague, $195; David C. Bosserman, $138; E. McD. Stevens, $1,341; J. W. Losse, $240; P. J. Wuest, $15; Seneca C. Taylor, $976.50; R. C. Brinkman, $150. Thus it appears that the total amount paid out by the receiver to interest coupon holders was the sum of $6,877.50.

In fairness to many of the parties it should be said that the question of paying out the rentals in satisfaction of defaulted interest coupons was not determined without considerable controversy. Of course the moving spirit in support of the making of such payments was respondent Hadley as represented by his attorney, the real issue of equality between creditors of the same class being clouded by the question injected into the case of whether the terms and provisions of the deed of trust were controlling as to the disbursement of rentals. There is nothing to indicate that most of the respondents had anything whatsoever to do with the controversy surrounding the priorpriety of Hadley's motion, and the record affirmatively discloses that respondent Taylor opposed it. However it seems that after the motion was sustained and the attitude of the court disclosed, the several respondents who knew of the matter accepted the situation as it was presented, and were thus enabled to secure payment in full for themselves or their clients.

There is no pretense, as we have already pointed out, of any prior authorization of payment to the respondents save for the payment in the two instances to respondent Hadley; and the validity of all other payments is sought to be upheld upon the theory that they were subsequently ratified by the court by its approval of the reports of the receiver which were filed from term to term thereafter, and which disclosed the disbursements which had been made by him. However such reports did not disclose the purpose of or reason for the payments to respondents, so as to have afforded notice of the true nature of the transaction.

The first objection on the part of the Reliable Loan and Investment Company to the payments theretofore made came in the early part of 1932, when the company must have first learned of what had taken

place, and when one of its attorneys called the receiver in connection with the matter. It is conceded that prior to the inception of this particular controversy, the Reliable Loan and Investment Company had not asked for payment of its coupons. The receiver's testimony was that he was unaware that such company was the owner of any of the notes, though the record discloses, as has been heretofore shown, that such company's answers were filed upon its appearance in the cause on October 25, 1929, in response to the order of publication upon the unknown noteholders, in which answers it set up that it was the owner of notes of the series of the aggregate value of $13,500.

On February 13, 1932, appellant, William A. Lahrman, trustee in bankruptcy of the Reliable Loan and Investment Company, filed his motion in the cause for an order upon the respondents herein to repay to the receiver the sums theretofore paid out to them. Such motion recited the appointment and qualification of the trustee; the bankrupt's ownership of the notes; the ratable and proportionate security provided for by the deed of trust; the default in the payment of the bankrupt's coupons; and the payments to respondents as interest coupon holders. The motion alleged that all of such payments had been made without notice to appellant or his predecessor in interest, and that the order of the court sustaining respondent Hadley's motion, the payments made pursuant thereto, and all other payments were invalid and of no force and effect. The prayer of the motion was that the respondents be required to show cause why they and each of them should not be directed to repay to the receiver the sums paid to them on their interest coupons, and that the receiver be required to distribute the money so returned to him, and all money thereafter collected from the rents of the property, in accordance with the terms and provisions of the deed of trust.

Immediately upon the filing of such motion, and on the same day, the court issued its order to show cause, directed to the several respondents herein as the parties named in appellant's motion.

In due course thereafter the respondents filed their separate returns to the order to show cause, such returns setting up, in substance, that appellant's motion did not state facts sufficient to constitute a cause of action; that the orders of the court in connection with the payments in question, having been entered at prior terms of court, could not be changed, altered, or set aside at a subsequent term; that the security of the deed of trust did not extend to the rents collected by the receiver, and therefore such rents were not subject to the equal payment of the debt secured; that appellant's cause of action, if such he had, was at law, triable before a jury, and beyond the jurisdiction of equity; and that even if the payments had been erroneously made, the same had been made under a mistake of law, in view of which they were not subject to be recovered back.

In addition to the above, respondents Brinkman and Stevens set up that they had received the payments made to them in the capacity of agent and attorney for the owners of the coupons, and that they were not personally liable for the return of such funds.

On March 21, 1932, there was a hearing upon appellant's motion, and at that time all matters heretofore referred to were brought out, save for such matters as appeared upon the face of papers in the case or in record entries. The receiver testified that he then had some ten or twelve hundred dollars of rental collections in his hands, but obviously not enough to satisfy appellant's claim.

On April 19, 1932, appellant's motion was denied by the court. His motion for a new trial was filed and likewise overruled, and his appeal to this court has followed.

The burden of appellant's argument, following the theory of its motion below, is that the several payments in question constituted an unlawful diversion of the fund in the custody of the court, and that consequently the court was under the duty of summarily compelling respondents as the recipients of such payments to repay the same over to the receiver. As the basis for his claim of an unlawful diversion, he argues that save for the two payments to respondent Hadley pursuant to the order of February 3, 1930, there was concededly no authorization of payment by the court; and further, that even such order itself was void and of no force and effect because of the lack of notice to appellant and other parties in interest.

To our minds, a bare reading of the statement of the facts sustains the charge of invalidity in connection with the making of the payments complained of, the manner of payment being in utter contravention of the fundamental purpose to be served by a receivership which is to secure and preserve the assets of the receivership estate, pending the litigation, for the security of all parties in interest, so that the same may be finally subjected to such orders and decrees as full and complete justice between all parties in interest may require in the light of the equitable principles by which the receivership is to be controlled and administered.

In other words, the assets of a receivership estate are lodged in the custody of the court, and are to be paid out or disbursed only upon its order (State ex rel. v. Hartman, 221 Mo. App. 215, 300 S. W. 1054); and in the course of the custody and disposition of such estate it is the duty of the court to handle it in such a way as will best serve the interests of all parties concerned. [State ex rel. v. Riley (Mo. App.), 4 S. W. (2d) 482.] The receiver, being a mere ministerial officer or instrument of the court by which he was appointed, has no inherent authority; and strictly speaking, is unauthorized to exercise any discretion with respect to the disposition of the funds in his hands, rather holding the same at all times subject to the orders and directions of the court in which the

1128

power of supervisory control is vested. [Stone v. St. Louis Union Trust Co., 183 Mo. App. 261, 278, 166 S. W. 1091.] Consequently such funds are to be paid out to the parties entitled thereto only upon an order of court after due application, notice, proof, and allowance (State ex rel. v. Hartman, supra); and the order of payment is to be determined by the rules governing priorities, so that in effecting a distribution all creditors of the same class may be treated on an equal basis, and the payments, if less than for the full amount of the claims, be apportioned *pro rata* among them all. [53 C. J. 312; 23 R. C. L., sec. 118, p. 108.]

But while it is true as a basic proposition that the receiver is allowed no discretion in regard to the application or disposition of the funds in his possession and holds the same subject to the order of the court as to payment, yet it is also true that payments made without prior authorization may be subsequently ratified and validated by the court upon the receiver's accounting to the court for his expenditures and securing the court's sanction and approval. [Stone v. St. Louis Union Trust Co., supra.] Of course, before the court's approval is given, it should be made to appear that the payments were made in good faith and that they were necessary and beneficial to all parties in interest, or, in other words, that the circumstances were such that if prior authority had been duly applied for by the receiver, it would have been granted by the court. [53 C. J. 144, 158, 309.]

So in this instance, respondents insist that even though the payments to them, save for the first two payments to respondent Hadley, were made without any prior authorization by the court, yet the court did ratify such payments by its acceptance and approval of the receiver's subsequent term reports disclosing the payments, and thus placed all payments upon the same basis as the two made pursuant to the order of February 3, 1930, so far as concerns the question of their validity. For the purposes of the case this insistence may be taken as correct, though only by assuming that the court in some manner acquired information beyond that disclosed on the face of the reports, wherein the nature and purpose of the payments to respondents did not appear as we have already pointed out.

Now to the end that full and complete justice may be done between all parties in interest and payment of the claims made ratably and without priority or preference as between creditors of the same class, it is the duty of the court in control of a receivership to fix the time within which any and all claims against the estate shall be presented, to give due notice thereof, and to reserve any order of distribution until an opportunity has been afforded for the status of all claims and their order of priority to be determined. [State ex rel. v. Hartman, supra; 53 C. J. 310.] It is to be observed that the giving of notice to creditors as an essential prerequisite to the payment of

claims, it being elemental that one whose rights will be affected by a proceeding in court should be notified in order that he may appear and protect his interests. It follows, therefore, that any payments made are subject to the rights of parties in interest to whom no notice had been given, even in the case of parties to the action in which the receiver was appointed and other parties of record who appear to be interested in the fund. [53 C. J. 314; Seaboard National Bank v. Rogers Milk Products Co. (C. C. A.), 21 Fed. (2d) 414; Ruggles v. Patton (C. C. A.), 143 Fed. 312; Martin v. Morse, 193 App. Div. 732, 184 N. Y. Supp. 441; Boice v. Conover, 54 N. J. Eq. 531; 35 Atl. 402; Whalen v. Pasig Iron Works, 13 P. I. 417.]

In this instance not only was no notice given appellant or his predecessor in interest of the course to be followed with reference to payments to respondents, but in fact no time had ever been fixed by the court for the presentation of claims or steps of any character taken with that end in view. It is a significant fact that respondent Hadley's attorney did recognize the necessity for the giving of notice, but the trouble was that he served only the receiver, the one party to the cause to whom no notice was necessary. The receiver had no personal interest in the distribution of the funds, and as the agent and officer of the court he was at all times before it and subject to its orders without any process or notice served upon him. [53 C. J. 314; United States Blowpipe Co. v. Spencer, 61 W. Va. 191, 56 S. E. 345.]

Moreover the lack of equity in the course followed by the court is at once apparent when it is borne in mind that the court, through its receiver, knew of the deed of trust and of the series of notes outstanding, the large majority of which, so far as this record discloses, were in the hands of unknown holders, but holders nevertheless of equal standing with the respondents herein. That the court did not know the identity of such holders is of no consequence, for at the very time that payments were being made such unknown holders were being brought into court to answer to the mechanic's lien action, and appellant's predecessor in interest had long since been before the court with the extent of its note holdings disclosed upon the face of the record.

So it would at once appear that an order upon respondents for reimbursement in favor of the rights of appellant and other parties equally in interest should have been entered by the court, but as against such conclusion respondents urge certain objections which we shall now consider with more or less particularity.

It is first contended that appellant's motion stated no cause of action in that he had not established his status as a creditor, and was therefore in no position to challenge the validity or propriety of the payments made to respondents. Suffice it to say that he established his claim in precisely the same fashion as did respondent

Hadley, and in much superior fashion to that followed by the other respondents, who filed no claims before the court for allowance at all, but simply presented them to the receiver for payment. The basis of appellant's right to the relief he sought was that he was a party interested· in the fund. Such interest on his part fully appeared on the face of his motion, and was sustained by the evidence adduced at the hearing. In fact his interest in the fund as an interest coupon holder is not disputed.

It is next insisted that appellant's motion constituted a collateral attack on the·court's order or orders. We see no basis for such contention. The course pursued by appellant was a direct proceeding in the very case in which the improper disbursements were made, and was a direct attack upon the validity of such disbursements. The right of the court having custody of receivership assets, pending final distribution, to order the return of unauthorized or improper payments is well recognized. [53 C. J. 313.]

The next point made is that it did not appear from the face of appellant's motion that he had obtained authority from the court appointing him to institute this proceeding. Aside from the fact that appellant's legal capacity to sue was not questioned below, the weight of authority supports the view that a trustee in bankruptcy is not required to obtain leave to sue from the appointing court before instituting an action or proceeding in another court, his authority being derived from the bankruptcy act itself. · [7 C. J. 252; Cartwright v. West, 155 Ala. 619, 47 So. 93; Porter v. Hughes, 198 Ala. 36, 73 So. 400; Clements v. Eggleston, 216 Ala. 590, 114 So. 2; Holmes v. Schmitt, 91 Cal. App. 689, 267 Pac. 558; Traders' Insurance Co. v. Mann, 118 Ga. 381, 45 S. E. 426; Boyle v. Lewiston Trust Co., 126 Me. 74, 136 Atl. 292; Callahan v. Israel, 186 Mass. 383, 71 N. E. 812; Chism v. Citizens' Bank of Clarksdale, 77 Miss. 599, 27 So. 637.]

It is suggested that all the orders of the court either authorizing payments or approving those already made were entered at terms of court prior to that at which appellant's motion was filed, and that at such subsequent term the court had no jurisdiction to modify or set aside its orders entered at prior terms. Suffice it to say that any party having such an interest in the fund being distributed as will be affected by the distribution, and having had no notice of the proceeding, may interpose his objections thereto at any time before the estate is closed. [53 C. J. 313; Seaboard National Bank v. Rogers Milk Products Co., supra.]

Respondents argue further that by virtue of having pressed their claims for payment, they should have a prior equity over appellant whose predecessor in interest had never taken steps to have his coupons paid, though it had been a party to the mechanic's lien action since October 25, 1929. Of course, inasmuch as the interest

coupons were all of the same issue and had the same maturities, the only claim of priority available to respondents is that they applied for and received payment ahead of other holders of equal standing. There could be no equity in such a course, where no time had been fixed for the presentation of claims against the estate and no notice given to claimants. As we have already pointed out, the prime purpose of a receivership is to prevent priorities and preferences as between creditors of the same class, and to put them all upon an equal basis in the distribution of the receivership assets.

There is a slight suggestion that the payments to respondents should be upheld upon the theory that they were for the best interest of the estate being administered. What respondents undoubtedly have reference to is the rule that receivership funds may be applied to the payment and discharge of threatening encumbrances against the property where the loss threatened is of greater value than the amount expended, and where it appears that the best interests of the parties are thereby subserved. However the rule has no application under the facts of the case at bar. Respondent Hadley's attorney testified that prior to the appointment of the receiver he had requested that the property be advertised for sale, the notes being in default, but in compliance with the court's order had not proceeded further. Obviously such a threat on this part, desisted from at the very inception of the case, could not have warranted the payment of his coupons one year or more later. And so far as concerns the other note holders, the evidence was that no steps had been taken by them or in their behalf towards a foreclosure of the property.

Finally it is argued that the provision for equal payment contained in the deed of trust refers only to the foreclosure of such deed of trust and the equal and proportionate distribution of the proceeds derived therefrom, and has no application to the payment or distribution of the rents collected by the receiver. So far as is disclosed by so much of the deed of trust as has been brought before us, it does not appear that the lien of the deed of trust was made to extend to the rents and income from the property. But be this as it may, whatever the basis of respondents' claims may be, appellant likewise stands before the court upon an identical footing in the distribution of the assets of the estate, so that the preference extended to respondents over him was in any event unwarranted.

Separate and apart from the points urged on behalf of all the respondents is the contention of respondent Stevens that in accepting the payment shown by the records to have been made to him, he was acting as agent and attorney for a disclosed principal, his brother, Richard H. Stevens; that his acceptance of payment was an act within the scope of his agency; and that the same is therefore to be considered the act of his principal so as to have entailed no personal liability upon him.

Though he has filed no separate brief, the identical situation also obtains as to respondent Brinkman, whose testimony was that he accepted payment as agent and attorney for the Modern Metal Weather Strip Company.

The rule urged by respondent Stevens of the agent's nonliability in the case of a disclosed principal is well established, but it does not fit the present situation. If his principal was disclosed, the disclosure was to the receiver, who did not in anywise represent appellant in making the payments in question. However this proceeding is not a contest between the receiver and the respondents, but one between the latter and appellant. Now there is no pretense that appellant knew of the agency of either Stevens or Brinkman, or could have learned the same by recourse to the records where no such fact appeared. Indeed there is no suggestion that even the court itself, in approving the payments, was apprised of the representative capacity of such two parties.

After all, the gist of the case is that respondents Stevens and Brinkman, regardless of what their actual status may have been, received improper payments from the receiver, and appellant, who knew only that payments had been made to them, elected to proceed upon the theory, as he had the right to do, that where receivership funds have been erroneously disbursed to persons not entitled thereto, the court may order repayment by such persons. Appellant was not bound to go behind the record, and it would have been a very simple matter for such two respondents to have averted the situation in which they now find themselves by having filed claims disclosing whom they represented. But, at any rate, the question would seem to be more theoretical than practical. According to their testimony, respondents Stevens and Brinkman were acting not for themselves but in the interest of their principals, and it would be unthinkable that the principals should be permitted to enjoy a benefit from the services rendered by their agents and at the same time, upon the request for reimbursement to the agent for the loss sustained, disclaim responsibility for the very acts by which the benefit was conferred.

It follows that the order of the circuit court denying appellant's application for an order upon respondents to repay the moneys theretofore received from the receiver should be reversed, and the cause remanded, with directions to the court to enter up a new order sustaining such application. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court.

The order of the circuit court denying appellant's application for an order upon respondents to repay the moneys theretofore received from the receiver is, accordingly, reversed, and the cause remanded, in accordance with the recommendations of the Commissioner. *Becker, P. J.*, and *Kane* and *McCullen, JJ.*, concur.