Thomas SCOTT, Respondent,

v.

HOME MUTUAL TELEPHONE CO. et al.,
Defendants,

v.

James C. GURNEY, Appellant.

No. 25965.

Missouri Court of Appeals,
Kansas City District.

Dec. 18, 1972.

Martin Anderson, Kansas City, for appellant.

Robert B. Paden, Maysville, for respondent.

Before SHANGLER, C. J., PRITCHARD and WASSERSTROM, JJ., and ROBERT G. RUSSELL, Special Judge.

PRITCHARD, Judge.

James C. Gurney, former court-appointed receiver of the Home Mutual Telephone Company, appeals from an order disallowing his payment (made without a prior court order) of $4,875.00 attorney fees to J. K. Owens, and ordering Gurney to return that amount to the successor receiver.

Gurney's sole point that "The court erred in refusing to allow attorney's fees for services rendered to the estate by receiver's attorney" is insufficient in itself to present anything for review under Rule 83.05(e), V.A.M.R., in that it does not "briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed." The deficiency causes the appeal to be subject to dismissal. Respondent's brief setting up its point "The court acted properly, on the record, in refusing to allow attorney's fees or additional fees to the receiver for employment of counsel" is for the same reason deficient, and causes that brief to be subject to being disregarded. The argument portions of the briefs do, however, develop the respective positions of the parties, and under that posture neither will there be a dismissal of the appeal nor a disregarding of respondent's point.

Thomas Scott, a stockholder of the telephone company, petitioned the circuit court through his attorney, J. K. Owens, for the appointment of a receiver of all the assets of the corporation. On October 28, 1964, the court appointed Gurney as receiver by order specifying, among other powers, "with full power and authority, as such receiver to take same [property, assets and business] into his possession and to incur such expenses as may be necessary or advisable in connection therewith." Upon petition by Gurney on January 13, 1965, the court ordered the sale of certain items constituting the telephone plant, excluding presently used telephones, station equipment and real estate to be sold to General Telephone Company. Thereafter, Gurney took charge of the remaining assets, and from 1965 through 1970, he received $41,615.63 for operating income, $995.93 for interest and refund income, and $5,457.40 for the sale of assets, totalling $48,068.96. Against this figure was charged actual operating expenses of $33,578.71, leaving net assets of $14,490.25. As receiver, Gurney received $5,025.00, and J. K. Owens received $4,875.00 as attorney fees, totalling further receivership expenses of $9,900.00.

The testimony of Gurney as to the services performed for him by J. K. Owens is rather skimpy. Owens, who was Gurney's attorney from the start of the receivership requested Gurney to prepare a report to the court as ordered on or before December 30, 1969, and Owens thought that the report was sufficient. Owens' attorney fees were paid to him by Gurney from 1964 to date without any court orders. As to why he did not get court orders, Gurney testified: "A I would always talk to Joe about it. I would ask him what his attorney's fees were—to be paid in six month intervals—and he told me what his attorney's fee would be. He would go over with me what I done in the last six months. Q Was some of this work done in concert with him? A Well, we would talk it over." Gurney assumed Owens was discussing the matters with the court, and knew that he was taking up a lot of his

time. "Every problem I had—legal or sometimes it's policy-wise—I would always discuss it with Mr. Owens. On two occasions Owens went with Gurney to Jefferson City. The two conferred with respect to the sale of the company and at the time of the distribution of the assets to the corporate stockholders.

Gurney prepared Exhibit No. 1 purporting to show the time spent with Owens. For December 7, 1964, there is entered 8 hours, "trip to K. C. to see Owens"; on December 23, 1964, 5 hours, "trip to Liberty to see Owens." The 8 hour figure included Gurney's travel time from Kidder, Missouri to Kansas City. On January 12, 1965, there was an 8 hour trip to see Owens; on May 13, 1965, there was a 12 hour trip to Jefferson City with Owens in connection with the application to sell the business to General Telephone Company; on June 9, 1966, there was a 6 hour trip to Kansas City to see Owens, and a same trip of 6 hours on September 7, 1966. In 1967, there were two trips of 6 hours each to Kansas City to see Owens, and one 5 hour trip to Liberty to see him. No conferences or trips were recorded for 1968, and the business had been closed down for 1969, 1970 and 1971. On page 11 of Exhibit No. 1 is Gurney's statement, "Over the course of the years I had many meetings with Mr. Owens on legal and policy matters and would conservatively estimate going to his house at least once a month for six and a half years. Seventy trips @ 2½ miles per trip. 185 Miles 37 Hours." Including travel time, the foregoing hours total 99.

Gurney, of course, did not comply with the rules governing the conduct of receiverships. See Progress Press Brick & Machine Company v. Sprague, 228 Mo.App. 1116, 65 S.W.2d 154, where several payments were made without authorization by the court. The court said, 65 S.W.2d 159 [1–4] "The receiver, * * * is unauthorized to exercise any discretion with respect to the disposition of the funds in his hands, rather holding the same at all times subject to the orders and directions of the

court in which the power of supervisory control is vested. (Citing case.) Consequently such funds are to be paid out to the parties entitled thereto only upon an order of court after due application, notice, proof and allowance * * *." The Sprague case goes on (65 S.W.2d 159 [5, 6]) to observe that payments made without prior authorization may be subsequently ratified and validated by the court, "Of course, before the court's approval is given, it should be made to appear that the payments were made in good faith and that they were necessary and beneficial to all parties in interest, or, in other words, that the circumstances were such that if prior authority had been duly applied for by the receiver, it would have been granted by the court." The court did order that the subsequent applications be sustained.

■ Here, Gurney did proceed to take charge of the assets of the telephone company, and did in fact wind it up. Except for the amount of attorney's fees paid out by him there is no evidence or suggestion of any bad faith, carelessness or negligence upon Gurney's part. In paying the fees that he did without court approval, Gurney, however, acted at his peril. Naslund v. Moon Motor Car Company, 345 Mo. 465, 134 S.W.2d 102, 107 [4–6]. Thus, the court below did not abuse its discretion in disallowing the requested allowance of $4,-875.00 upon this record.

It is apparent that Gurney did make some use of his attorney in numerous conferences, and that some allowance for the services actually and necessarily rendered should be made. While specific evidence of the nature of the services of Owens is here lacking, it is inferable that at least somewhere in the neighborhood of 75 to 100 hours of work and conferences were done. Such time may constitute a basis for the allowance of some fees. Obviously, the time of travel by Gurney to see Owens may be computed, and that amount deducted from the total time of conferences noted by Gurney on Exhibit No. 1 and the prevailing hourly rates for the attorney's

services may be shown for the years in question.

Accordingly, the judgment is reversed and the case remanded for further proceedings in connection with the taking of further evidence as above, with directions to modify the order to Gurney to repay attorney's fees in accordance with what the court shall find to be the reasonable fees under the evidence.

All concur.