STATE of Missouri, ex rel., John ASH-CROFT, Attorney General, State of Missouri, et al., Plaintiffs-Respondents,

v.

ST. LOUIS NO. 2, INC., d/b/a Hamilton Medical Center, et al., Defendants-Appellants.

No. 42467.

Missouri Court of Appeals, Eastern District, Division Two.

June 2, 1981.

---

3. MAI 11.04 (1977 Revision).

Lloyd A. Palans, Clayton, for defendants-appellants.

Donald B. Kammerer, Dept. of Soc. Serv., Christopher M. Lambrecht, Asst. Atty. Gen., Jefferson City, for plaintiffs-respondents.

GUNN, Judge.

Pursuant to a consent order entered into by all parties, the trial court appointed a receiver to continue the operations of two private health care facilities in St. Louis. This appeal arises from the trial court's approval of the receiver's accounting which allowed payment of wages incurred prior to the date of the consent order, which appellants—primarily the security holder—complain is contradictory to the consent order. We affirm the trial court's approval of the receiver's accounting.

Appellants Saint Louis No. 2, Inc. and Saint Louis No. 3, Inc., doing business as Fairgrounds and Manor and Hamilton Medical Center, are nursing home and mental health care facilities located in St. Louis, providing housing and services for state patients and other individuals both privately and under state contract. Appellant J. J. Donovan is president of the two facilities. Appellant American Geriatric Enterprises, Inc. owns the two facilities and the proper-

ties on which they are located and holds a security interest in the properties. On March 22, 1978, Donovan gave notice to the State Department of Mental Health that because of lack of revenues, Fairgrounds Manor and Hamilton Medical Center would cease operations at 3:00 p.m. on March 24, 1978. The Missouri Department of Mental Health and Department of Social Services through the Attorney General immediately took action seeking to restrain appellants from closing the facilities, expending assets or evicting any individual under the care of appellants. The state also requested the appointment of James F. Walsh, Director of the Missouri Department of Social Services, to act as receiver for the facilities. On March 24, 1978, after lengthy negotiations by the parties, the trial court signed a consent order appointing the Missouri Director of Social Services as receiver for Fairgrounds Manor and Hamilton Medical Center. The receiver was authorized to collect the funds owing the facilities and to pay all debts incurred after the date of the order and "to take any and all necessary steps to continue the operation" with "the authority to collect all funds due and owing Saint Louis No. 3, Inc. and Saint Louis No. 2, Inc., except as provided in paragraph 4 hereof."

Paragraph 4 of the order provides:

4. Notwithstanding any provision of this order to the contrary, it is further ordered that Petitioners Hensley and Reser, in their official capacities, shall pay to American Geriatric Enterprises, Inc. no later than the date of termination of this receivership, all sums presently due to Saint Louis No. 2, Inc. and Saint Louis No. 3, Inc. on account for services rendered through March 24th, 1978 without right of setoff.

Pursuant to the consent order, the receiver filed his report which included the setoff of certain items—principally employees' wages incurred for the week prior to March 24, 1978.

Appellants argue that the consent order prohibited a setoff for the items deducted by the receiver, since they occurred prior to March 24, 1978. But appellants overlook the specific fact that the court's order was predicated on appellants' assertion that all the payroll due for employees had been paid or would be paid. Checks from the State of Missouri totalling $218,067.59 payable to the two institutions for services provided for the Departments of Mental Health and Social Services were released by the state on the assurance that the payroll had been met as promised. That assurance formed the consideration for the consent order. There was clear evidence that the payroll had not in fact been met as promised. Hence, the paragraph 4 limitation as to the setoff was vitiated.

■ Appellants argue that a receiver must have specific authority before making any disposition of funds, and the receiver in this case was without authority to make the payment for the wages due. But *Progress Press Brick & Machine Co. v. Sprague*, 228 Mo.App. 1116, 1128, 65 S.W.2d 154, 159 (1933), cited by appellants, states:

... [W]hile it is true as a basic proposition that the receiver is allowed no discretion in regard to the application or disposition of funds in his possession and holds the same subject to the order of the court as to payment, *yet it is also true that payments made without prior authorization may be subsequently ratified and validated by the court upon the receiver's accounting to the court for his expenditures and securing the court's sanction and approval.* (emphasis added)

*See also Scott v. Home Mutual Telephone Co.*, 488 S.W.2d 922, 924 (Mo.App.1972). The court's approval of the receiver's report officially validated the expenditure for wages due prior to March 24.[1]

■ Appellants also complain that the payment of wage claims is inimical to their

1. The record is also clear that the March 24, 1978 consent order was no more than a temporary order with the trial court specifically reserving to itself authority to "make additional

Orders as may be necessary directed to all the Parties who are now before it as well as the Receiver...."

security interest. The record does refer to some security interest of appellant American Geriatric Enterprises, Inc. in Fairgrounds Manor and Hamilton Medical Center. And it is true that a receiver acquires possession of the assets subject to liens and equities affecting the property. *Edmiston v. J. C. G.-Medallion, Inc.,* 570 S.W.2d 306, 310 (Mo.App.1978). But the record is destitute of any evidence as to the type of security held by American Geriatric or how the receiver's payment of the payroll promised to have been paid by appellants is deleterious to that security interest—a burden for appellants to carry. Thus, appellants' arguments aimed at protection for their security—whatever it may be—are not here pertinent.

We also find that the trial court as trier of fact could find from the testimony presented that for the continued operation of the facilities the receiver was required to pay those wages accrued prior to March 24. *See Willard v. Doyle,* 612 S.W.2d 884, 888 (Mo.App.1981) on the trial court's right to determine the credibility of witnesses.

Judgment affirmed.

PUDLOWSKI, P. J., and WEIER, J., concur.